**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CHARLES J. O'CONNOR, JR., and JUDY A. O'CONNOR, *individually and on behalf of all other similarly situated*,**

**Plaintiffs,**

**v.** **Case No: 6:25-cv-1516-AGM-DCI**

**CTO REALTY GROWTH, INC., JOHN P. ALBRIGHT, MATTHEW M. PARTRIDGE, LISA M. VORAKOUN, and PHILIP R. MAYS,**

**Defendant.**

---

## REPORT AND RECOMMENDATION

This securities fraud action comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint. Doc. 43 (the Motion to Dismiss). Plaintiffs allege that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 by making materially false and misleading statements concerning CTO Realty Growth, Inc.'s calculation and reporting of Adjusted Funds From Operations (AFFO). Doc. 37 at 48-52. Plaintiffs also raise a derivative control-person claim under Section 20(a). *Id.* at 52-54. After careful consideration of the parties' briefing, the Amended Complaint, and the applicable law, the undersigned concludes that although Plaintiffs have adequately pleaded materially false or misleading statements and loss causation, the Amended Complaint fails to allege particularized facts giving rise to a strong inference of scienter as required by the Private Securities Litigation Reform Act (the PSLRA). As will be explained, the principal deficiency in the Amended

Complaint is its failure to plead particularized facts demonstrating what each of the Defendants knew, when that knowledge was acquired, and how each Defendant allegedly understood that CTO's calculation of AFFO rendered the challenged statements materially misleading. Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT** the Motion to Dismiss (Doc. 43) and **DISMISS** the Amended Complaint (Doc. 37).

## I. BACKGROUND

On November 18, 2025, Charles J. O'Connor, Jr. and Judy A. O'Connor on behalf of themselves and others similarly situated (collectively, Plaintiffs) filed the operative class action complaint in which they "seek[ ] to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder[.]" Doc. 37 at 2 (the Amended Complaint).[1]

In the Amended Complaint, Plaintiffs allege that they "purchased or otherwise acquired CTO securities between February 18, 2021 and June 24, 2025." Doc. 37 at 2 (the Class Period). Plaintiffs describe CTO as "a publicly traded real estate investment trust (REIT) that owns and operates a portfolio of purported high-quality, retail-based properties located primarily in higher-growth markets in the U.S." *Id.* According to the Amended Complaint, because generally accepted accounting principles (GAAP) require REITs to depreciate real estate assets in a manner that may not reflect their economic value, investors commonly rely on the non-GAAP metrics Funds From Operations (FFO) and Adjusted Funds From Operations (AFFO) to evaluate a REIT's

[1] Throughout this report and recommendation, "Individual Defendants" shall include John P. Albright (Albright), Matthew M. Partridge (Partridge), Lisa M. Vorakoun (Vorakoun), and Philip R. Mays (Mays). "Defendants" shall include the Individual Defendants together with CTO Realty Growth, Inc (CTO).

operating performance and distributable cash flow. *Id.* at 2-3. Plaintiffs allege that AFFO is widely understood to account for recurring capital expenditures (CapEx), which are necessary to maintain a REIT's properties and revenue-generating capacity. *Id.*at 2-4.

Plaintiffs allege that, throughout the Class Period, Defendants overstated CTO's AFFO by excluding recurring CapEx from the calculation, contrary to industry practice and the methodology allegedly employed by CTO's peers. Doc. 37 at 5. According to Plaintiffs, Defendants further misled investors by comparing CTO's AFFO to those peers while representing that the metrics were comparable, despite using a different methodology. Doc. 37 at 4-5. Plaintiffs describe at least 19 alleged misrepresentations or false statements made by Defendants in the form of: quarterly earnings calls, annual reports on form 10-K, and Sarbanes-Oxley certifications filed with the annual reports on form 10-K. Doc. 37 at 18-37. Plaintiffs also allege that the Individual Defendants were motivated to inflate AFFO because one-half of their cash bonuses were tied to that metric (*Id.* at 38) and that CTO was motivated to inflate AFFO to attract new money investments with promises of "attractive and sustainable dividend[s]." *Id.* at 18, 40.

According to the Amended Complaint, the alleged misrepresentations were revealed on June 25, 2025, when Wolfpack Research published a report asserting that CTO employed a "manipulative" definition of AFFO by excluding recurring CapEx, unlike its self-identified peers. Doc. 37 at 38-40. Plaintiffs allege that Defendants did not publicly respond to the report or address its allegations during a subsequent investor call. *Id.* at 6. Following publication of the report, CTO's stock price fell approximately 5.4%, closing at $17.10 per share on June 25, 2025. *Id.* Plaintiffs contend that, as a result of the alleged misrepresentations and the subsequent decline in CTO's share price, they and other members of the proposed class suffered economic losses. *Id.*

The Amended Complaint is structured as follows: 125 paragraphs of general allegations followed by two counts with specific allegations for each count. *Id.* at 1-48. Count I is titled "Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants" and includes ten paragraphs of specific allegations. *Id.* at 48-52. Count II is titled "Violations of Section 20(a) of the Exchange Act Against the Individual Defendants" and includes six paragraphs of specific allegations. *Id.* at 52-54. The first paragraph under each count states that "Plaintiffs repeat and re-allege each and every allegation . . . as if fully set forth herein." Doc. 37 at 48, 52.

Defendants filed the instant Motion to Dismiss and contend that the Court should dismiss the Amended Complaint due to shotgun pleading defects. Doc. 43 at 21-23. Defendants also raise the following four substantive arguments: 1) "Plaintiffs improperly rely on a short-seller report consisting of public information and anonymous, unconfirmed opinions, which does not constitute the corrective disclosure necessary to establish loss causation;" 2) "Plaintiffs' generalized allegations fail to satisfy the particularity requirements for pleading materially false or misleading statements;" 3) "Plaintiffs' generalized allegations fail to satisfy the particularity requirements for pleading . . . scienter;" and 4) the failure to sufficiently plead a § 10(b) claim is fatal to Plaintiffs' § 20(a) claim. *See* Doc. 43 at 2, 25.

Plaintiffs timely filed a response in which they argue that the "two-count complaint is the opposite of a shotgun pleading." Doc. 47 at 20 (the Response). As to the substantive arguments raised, Plaintiffs contend that they have sufficiently pleaded the following elements of a Section 10(b) violation: 1) material misrepresentations and omissions (*Id.* at 5-7); scienter (*Id.* at 7-11); and loss causation (*Id.* at 11-19). At the end of the Response, Plaintiffs state: "If this Court grants any part of the motion, Plaintiffs respectfully request leave to amend." *Id.* at 20.

On the same day Defendants filed the Motion to Dismiss, they filed a document listed on the docket as "NOTICE to the Courts to take judicial notice regarding 43 MOTION to Dismiss Plaintiffs' Amended Class Action Complaint and Incorporated Memorandum of Law." Doc. 44. The document itself is titled "Defendants' Unopposed Request for Judicial Notice and Supporting Memorandum of Law." *Id.* There, Defendants request that the Court take judicial notice of the following documents:

> The exhibits [to the Motion to Dismiss], also attached hereto, consist of the Wolfpack Report of June 25, 2025, which is central to, and referenced throughout Plaintiffs' complaint, documents that are required by law to be filed or maintained with the Securities and Exchange Commission ("SEC") and contain information capable of accurate and ready verification, and CTO's annual report, available for public review on CTO's investor relations website.

Doc. 44 at 2. Defendants represent that "Plaintiffs express no opposition to this Request and agree that the Court may properly take judicial notice of the foregoing documents "for the purpose of determining what information was available to the market, but not for the truth of the matters asserted therein or for the purpose of resolving factual disputes." *Id.* at 3.[2]

[2] To the extent the parties have cited and relied on the Wolfpack Report and SEC filings, the undersigned has reviewed and considered them. Although docket entry 44 was not docketed as a motion nor referred to the undersigned, the undersigned notes that the relief requested is unopposed and that Defendants request the same relief in footnote three of the Motion to Dismiss. Doc. 43 at n.3. The undersigned has reviewed the legal authority cited and agrees with the parties that the Court may properly consider the Wolfpack Report pursuant to the incorporation by reference doctrine. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal"). Here, Plaintiffs refer to the Wolfpack Report extensively in the Amended Complaint as it is the source of the alleged corrective disclosure—and therefore central to the elements of the claims raised. The Court may also consider the SEC filings because "a court . . . considering a motion to dismiss in a securities fraud case [] may take judicial notice of relevant public documents required to be filed with the SEC and actually filed." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999). However, as Defendants concede in the notice, the undersigned will not consider those documents "for the truth of the matters asserted therein or for the purpose of resolving factual disputes." Doc. 44 at 3.

The district judge referred the Motion to Dismiss to the undersigned (Doc. 56), and the matter is now ripe for review.

## II. LEGAL STANDARD

Courts subject securities fraud claims to a triple pleading standard. A "claim brought under Rule 10b–5 must satisfy not only the run-of-the-mill federal notice-pleading requirements, *see* Federal Rule of Civil Procedure 8(a)(2), but also the heightened pleading standards found in Federal Rule of Civil Procedure 9(b) and the special fraud pleading requirements imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4. Failure to meet any of the three standards will result in a complaint's dismissal." *Carvelli v. Ocwen Fin. Corp*., 934 F.3d 1307, 1317–18 (11th Cir. 2019) (citing *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005)).

Rule 8(a)(2) sets forth the notice pleading standard and requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 "does not require 'detailed factual allegations,'" it demands more than an "unadorned . . . accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the allegations are more conclusory than factual, the court need not assume their truth. *See Chaparro*, 693 F.3d at 1337 (11th Cir. 2012) (citing *Mamani v. Berzain*, 654 F.3d 1148, 1153–54 (11th Cir. 2011)). Courts will dismiss a complaint where a plaintiff provides only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A plaintiff must make factual allegations that "raise a right to

relief above the speculative level," *Id.*, and cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

When asserting claims sounding in fraud, Plaintiffs are subject to a heightened pleading standard and must state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally" (*Id.*), but a plaintiff must also allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla.*, Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997); *see also FindWhat*, 658 F.3d at 1296.

The PSLRA goes further still and requires plaintiffs to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1)(B). Plaintiffs must also allege scienter, meaning that Plaintiffs must, "with respect to each act or omission alleged to violate [the PSLRA], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A). In this context, "a strong inference" is one that is "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, at 319, 321 (2007). A plaintiff's failure to meet any of the three standards will result in the court dismissing the complaint. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

## III. DISCUSSION

Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Doc. 37 at 2. Section 10(b) of the Exchange Act provides as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 provides a private right of action under Section 10(b) and further prohibits:

> any person, directly or indirectly, ...
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5; *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 318 (2007) (recognizing that Section 10(b) "affords a right of action to purchasers or sellers of securities injured by its violation"). A plaintiff bringing a claim pursuant to Section 10(b) and Rule 10b-5 must allege: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection" between the misrepresentation or omission and the loss, commonly called "loss causation." *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1236–37 (11th Cir. 2008). As will be explained, the undersigned finds that Plaintiffs have sufficiently pleaded all the necessary elements except for scienter.

### A. The Amended Complaint is Not Subject to Dismissal Based on Shotgun Pleading Defects

As a threshold matter, Defendants argue that the Amended Complaint should be dismissed for shotgun pleading and group pleading defects. Doc. 43 at 21-23. Plaintiffs respond that the "straightforward, two-count complaint is the opposite of a shotgun pleading" and that the Amended Complaint is sufficient to "put Defendants on notice of the specific claims against them, and the facts that support those claims." Doc. 47 at 27 (cleaned up). The undersigned finds that although the Amended Complaint appears at first blush to suffer from shotgun pleading and group pleading defects, it is sufficient to put Defendants on notice of the claims against them and should not be subject to dismissal on those bases.

Defendants contend that the Amended Complaint is a shotgun pleading because Plaintiffs fail to "separate each cause of action or claim for relief into a different count" and "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Doc. 43 at 22. Plaintiffs respond that "each misrepresentation or omission is identified by speaker and the date it was made . . . followed by a tailored paragraph explaining why the specific statements therein were false and misleading." Doc. 47 at 27. Upon review, the undersigned is not inclined to dismiss the Amended Complaint as a shotgun pleading even though Plaintiffs do "repeat and re-allege each and every allegation . . . as if fully set forth" in each count. Doc. 37 at 48, 52.

There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts;" 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying

which applies to which. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).[3] "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also, Vujin v. Galbut*, 836 F. App'x 809, 814 (11th Cir. 2020). Importantly, clarity is at the heart of pleading standards, as "notice is the touchstone of the Eleventh Circuit's shotgun pleading framework." *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp.3d 1124, 1139 (M.D. Fla. 2018). While courts will order repleading where it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996), courts are less inclined to do so where the pleading structure has not "materially increased the burden of understanding the factual allegations underlying each count." *See MAZ Partners LP v. First Choice Healthcare Sols., Inc.*, 2019 WL 5394011, at *7 n.7 (M.D. Fla. Oct. 16, 2019), *report and recommendation adopted*, 2020 WL 1072582 (M.D. Fla. Feb. 14, 2020).

*MAZ* is instructive in this respect. In *MAZ*, the plaintiff—like Plaintiff in this case—filed a two-count complaint raising a Section 10(b) and Rule 10b-5 claim together with a Section 20(a) claim. *Id.* at *1. The *MAZ* defendant raised a shotgun pleading argument[4] because "each count of the complaint impermissibly incorporates all of the preceding allegations of the complaint." *Id.* at *7 n.7. The court found the shotgun pleading argument unpersuasive because: "There are only

[3] Plaintiffs' seek to distinguish *Weiland* from the instant case (Doc. 47 at n.7), but—despite the factual differences—the undersigned notes that *Weiland* is cited broadly for the shotgun pleading standard in the Eleventh Circuit. *See, e.g., Commodity Futures Trading Comm'n v. Larralde*, 2023 WL 11645683 (M.D. Fla. Aug. 31, 2023) (citing *Weiland* for the shotgun pleading standard in an order dismissing a securities fraud case).

[4] Along with the shotgun pleading argument, the *MAZ* defendant also raised substantive 12(b)(6) arguments. *See MAZ*, 2019 WL 5394011, at *8-20.

two counts in the complaint, and importantly, all of the factual allegations are relevant to both [claims], particularly because Count II relates to derivative liability and cannot be established without a violation under Count I." *Id.* Here, the Amended Complaint similarly raises only two counts; Count II—a Section 20(a) claim—is derivative of Count I; and the facts alleged in support of Count I are relevant to Count II. Additionally, Plaintiffs' response that they have specifically attributed certain "misrepresentations or omissions" to each defendant is well taken. While Plaintiffs often name "Defendants" or "Individual Defendants" collectively, Plaintiffs have made certain allegations about particular Defendants where the facts alleged do not involve the "Defendants" in a collective sense. *See, e.g.,* Doc. 37 at ¶¶ 25, 26, 27, 28, 30, 53, 54, 59, 63, 65, 92, 94, 96, 98, 100, (describing statements made by each Defendant individually).

Further, Defendants have demonstrated that they understood the claims and allegations well enough to craft cogent, substantive arguments in support of dismissing both counts pursuant to Rule 12(b)(6). Doc. 37 at 48, 52; *see generally*, Doc. 43; *see also Weiland*, 792 F.3d at 1324 (finding that a complaint was not a shotgun pleading and noting that defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e)). Accordingly, the undersigned recommends that the Court reject Defendants' argument that the Amended Complaint is a shotgun pleading.

Relatedly, Defendants contend that the Amended Complaint should be dismissed for improper group pleading where Plaintiffs assert Count I collectively against "Defendants" and Count II collectively against the "Individual Defendants." Doc. 43 at 22. Although Defendants cite authority discussing both group pleading and shotgun pleadings in support of this argument (Doc. 43 at 22), the doctrines are analytically distinct in the securities context. As explained above, whether a complaint constitutes an impermissible shotgun pleading relates to its compliance with

Rules 8 and 10. *Weiland*, 792 F.3d at 1320 ("Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"). By contrast, in the securities fraud context, allegations that collectively attribute conduct or scienter to multiple defendants implicate the sufficiency of the pleadings under Rule 12(b)(6), Rule 9(b), and the PSLRA's heightened particularity requirements. *See Phillips v. Sci.-Atlanta, Inc*., 374 F.3d 1015, at 1018 (11th Cir. 2004) ("The group pleading doctrine in securities litigation . . . can be broadly characterized as a presumption of group responsibility for statements and omissions in order to satisfy the particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b)."). Accordingly, the undersigned will address Defendants' group pleading argument when evaluating whether Plaintiffs have adequately pleaded the substantive elements of their Section 10(b) and Rule 10b-5 claims.

**B. Plaintiffs Have Sufficiently Pleaded Materially False or Misleading Statements**

Defendants argue that Plaintiffs have not pleaded a materially false or misleading statement with the requisite particularity. Doc. 43 at 17. Specifically, Defendants assert that: "Plaintiffs fail to satisfy the PSLRA's 'particularity' requirements for pleading falsity by making overly generalized allegations" and "Plaintiffs ignore CTO's robust disclosures, including those made during earnings calls . . . in its filings with the SEC and in its quarterly earnings reports, [where] CTO carefully notates its non-U.S. GAAP financial measures . . . and includes a detailed table to numerically reconcile AFFO to GAAP net income." *Id.* at 17-18. Plaintiffs respond by noting that "Defendants cite no authority supporting any challenge to falsity" and the Amended Complaint "identifies each misleading statement in detail, and pleads when, where, and how each was made, and why Plaintiffs believe each was misleading." Doc. 47 at 5. The undersigned finds that Plaintiffs have sufficiently pleaded materially false or misleading statements.

In the context of a Section 10(b) claim, only "material" misrepresentations or omissions are actionable. 17 C.F.R. § 240.10b–5(b). "A misrepresentation or omission is material if, 'in the light of the facts existing at the time,' a 'reasonable investor, in the exercise of due care, would have been misled by it.'" *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011)). The Eleventh Circuit has further clarified the standard by explaining that "materiality depends on whether a 'substantial likelihood' exists that a 'reasonable investor' would have viewed a misrepresentation or omission as 'significantly alter[ing] the 'total mix' of information made available.'" *Carvelli*, 934 F.3d at 1317 (quoting *S.E.C. v. Morgan Keegan & Co*., 678 F.3d 1233, 1245 (11th Cir. 2012)). To satisfy Rule 9(b)'s heightened pleading standard, a plaintiff must allege the following: "(1) which statements or omissions were made in which documents or oral representations; (2) when, where, and by whom the statements were made (or, in the case of omissions, not made); (3) the content of the statements or omissions and how they were misleading; and (4) what the defendant received as a result of the fraud." *FindWhat*, 658 F.3d at 1296. The PSLRA overlaps with Rule 9(b) and requires that a plaintiff "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading[.]" *Id.*

First, the undersigned finds Defendants' argument underdeveloped and insufficiently supported by legal authority. *See* Doc. 43 at 16-20. Although Defendants devote several pages to arguing that "Plaintiffs have not pled materially false or misleading statements," the argument consists largely of factual assertions regarding the scope of CTO's disclosures and the propriety of CTO's AFFO methodology.[5] *Id.* Notably, Defendants cite minimal legal authority—only two

[5] The undersigned agrees with Plaintiffs' assertions that Defendants have not meaningfully engaged with the allegations in the Amended Complaint and instead spend much of their Motion

cases for general propositions—and provide no legal analysis addressing why Plaintiffs' allegations are insufficiently pleaded as a matter of law. *See e.g.* Doc. 43 at 18 (providing no legal authority or analysis to support the proposition that "CTO's calculation may be different from some other shopping center REITs, as acknowledged by CTO, in no way renders the calculation erroneous, misleading, or deceptive."). As movants, "Defendant[s] bear[ ] the burden of supporting [their] arguments for dismissal." *Rugby Holdings, LLC v. First Horizon Bank*, 2024 WL 4989340, at *2 (M.D. Fla. Dec. 5, 2024). Nevertheless, even considering Defendants' arguments as presented, dismissal is unwarranted.

Defendants principally argue that CTO's disclosures—including reconciliation tables, explanations of its AFFO methodology, and warnings that AFFO was a non-GAAP measure not comparable to similarly titled metrics—foreclose any inference that the challenged statements were misleading. Doc. 43 at 17-19. Whether those disclosures sufficiently cured the alleged omissions, however, depends upon the accuracy and completeness of the disclosures and the context in which those statements were made—an assessment appropriate for summary judgment or trial. *See e.g.*, *S.E.C. v. Morgan Keegan & Co.*, 678 F.3d 1233, at 1248 (11th Cir. 2012) (reviewing the district court's summary judgment ruling and discussing the importance of evaluating the "total mix" of information available to determine whether statements made were "materially misleading" within the securities fraud context). Notwithstanding CTO's 10-K disclosures, Plaintiffs allege that Defendants represented CTO's AFFO as measuring operating performance while excluding recurring capital expenditures—a metric Plaintiffs argue is necessary to accurately reflect CTO's operating performance. Doc. 37 at 14-18 (comparing Peer Group

---

to Dismiss proffering fact-based arguments more appropriate for summary judgment or trial. *See* Doc. 47 at 1.

AFFO methodologies and alleging that "CTO's distorted calculation of AFFO was material and rendered any comparison to the Peer Group misleading."). Accepting those allegations as true, the Court cannot conclude as a matter of law that the challenged statements were not misleading.

Further, a review of the Amended Complaint reveals that Plaintiffs have pleaded the existence of at least nineteen "materially false and/or misleading statements." Doc. 37 at 18-37. Plaintiffs allege at least three categories of statements: 1) statements made during earnings calls; 2) Annual Report Form 10-K filings; and 3) signed Sarbanes-Oxley certifications attached to the 10-K filings. *Id*. For each statement, Plaintiffs describe: the statement's source, format, and date—be it an earnings call, a 10-K filing, or a Sarbanes-Oxley certification; second, Plaintiffs provide a quote of the relevant language from the statement; and lastly, Plaintiffs explain why the statements are materially false and/or misleading. *Id.* This "is sufficient to plead the who, what, when, where, and how of the allegedly false statements." *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1237 (11th Cir. 2008). Whether those alleged statements "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance" is a question of fact inappropriate for resolution at the 12(b)(6) stage. *See Luczak v. Nat'l Beverage Corp*., 812 F. App'x 915, 924 (11th Cir. 2020); *see also In re KnowBe4, Inc. Sec. Litig*., 2025 WL 3718352 (S.D. Fla. Dec. 23, 2025) (citing *In re Twinlab Corp. Sec. Litig*., 103 F. Supp. 2d 193, 201 (E.D.N.Y. 2000) (noting that materiality is "a question of fact that may rarely be resolved at the motion to dismiss stage").

Accordingly, the undersigned finds that Plaintiffs have sufficiently pleaded the existence of a materially false or misleading statement.

**C. Plaintiffs Have Sufficiently Pleaded Loss Causation**

Defendants also argue that Plaintiffs fail to adequately plead loss causation because the Wolfpack Report (the Report) cannot constitute a corrective disclosure. Doc. 43 at 3, 11-16.

Specifically, Defendants contend that the Report is not a credible corrective disclosure because: it was issued by a short seller with a financial incentive to decrease CTO's stock price (*Id.* at 12-13); relied upon anonymous sources (*Id.* at 13-14); and merely repackaged publicly available information. *Id.* at 15-16. Plaintiffs respond that: loss causation is not subject to Rule 9's heightened pleading standard (Doc. 47 at 11-12); the Report is a proper corrective disclosure (*Id.* at 12-13); and that the Amended Complaint plausibly alleges the Report revealed previously undisclosed information. *Id.* at 13-17.

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must adequately plead, among other elements, loss causation. *Carvelli v. Ocwen Financial Corp*., 934 F.3d 1307, 1317 (11th Cir. 2019). To plead loss causation, a plaintiff must allege "a causal connection between the material misrepresentation and the loss." *Id*. Unlike allegations of falsity and scienter, however, loss causation is governed by Rule 8's plausibility standard rather than Rule 9 and the PSLRA's heightened pleading requirements. *See In re Teco Energy, Inc. Sec. Litig.*, 2006 WL 2884960, at *5 (M.D. Fla. Oct. 10, 2006) ("Loss causation is not subject to the PSLRA's heightened pleading requirement and must only be plead in accordance with Fed. R. Civ. P. 8(a)(2).").

**1. The Report May Constitute a Corrective Disclosure**

Defendants principally argue that the Report cannot constitute a corrective disclosure because it was authored by a short seller with a financial interest in reducing CTO's stock price, the report includes a disclaimer that reduces its evidentiary value, and the information contained in the Report was derived from public information and anonymous sources. Doc. 43 at 12-15. While some courts outside this Circuit have held otherwise, the undersigned is not persuaded that binding precedent precludes the Report from serving as a corrective disclosure.

As a threshold matter, neither the Fourth, Ninth, nor Eleventh Circuits impose a categorical ban on the use of short seller publications as corrective disclosures. *FindWhat*, 658 F.3d at 1311

n.28 (11th Cir. 2011) (explaining "that a corrective disclosure may originate from 'any source, and can take any form from which the market can absorb the information and react"); *Defeo v. IonQ, Inc.*, 134 F.4th 153, 163 (4th Cir. 2025) ("But we, like the Ninth Circuit, do not impose a categorical ban on using short-seller reports to plead loss causation."); *In re BofI Holding, Inc. Sec. Litig*., 977 F.3d 781, 795 (9th Cir. 2020) ("We therefore decline to categorically disqualify the [short seller] blog posts as potential corrective disclosures."). But Defendants correctly point out that the Ninth and the Fourth Circuits will not consider a short seller report as a corrective disclosure where the report is biased, relies on anonymous sources for information, and includes language disclaiming its own accuracy. *See In re Nektar Therapeutics Sec. Litig*., 34 F.4th 828, 839 (9th Cir. 2022); *In re Bofl Holding, Inc. Sec. Litig*., 977 F.3d 781, 794-95 (9th Cir. 2020), and *Defeo v. IonQ, Inc*., 134 F.4th 153 (4th Cir. 2025). Nevertheless, the undersigned follows the Eleventh Circuit precedent in approaching the matter.

Considering the restrictions on short seller opinions Defendants have identified—short seller financial incentives, anonymous sources, public information sources, and disclaimers—the Eleventh Circuit has only imposed limitations on short seller opinions that rely solely on public information because "the mere repackaging of already-public information" is insufficient to be construed as "revelatory of any fraud." *See Meyer v. Greene*, 710 F.3d 1189, 1197-1200 n.10 (11th Cir. 2013); *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1246 (11th Cir. 2023) (finding a short seller report is not a corrective disclosure when it fails to "identify any new, non-public, or otherwise not readily available information"). While *Meyer* provides one example of the kind of short seller opinion that would *not* constitute a corrective disclosure, *Meyer* does not address whether disclaimers, financially motivated short sellers, or the use of anonymous sources would, as a matter of law, disqualify such a report from serving as a corrective disclosure. Indeed,

Defendants have not identified any binding cases limiting the use of short seller reports as corrective disclosures due to disclaimer language contained in the report, the financial incentives of the author, or the report's reliance on anonymous sources.

Considering the Eleventh Circuit precedent, the relevant inquiry at this stage of the litigation is not whether the Report was authored by a financially motivated short seller or even whether the report is credible—and the undersigned takes the view that credibility would be a merits determination inappropriate at this stage—but whether Plaintiffs plausibly alleged in the pleading that the Report disclosed previously concealed information.

**2. Plaintiffs Plausibly Allege that the Report Revealed Previously Undisclosed Information**

The Eleventh Circuit has made clear that a corrective disclosure must reveal "something previously hidden or actively concealed." *Meyer*, 710 F.3d at 1199 n.10; *see also MacPhee*, 73 F.4th at 1246 ("We have held that when 'the material portions' of articles or reports are 'gleaned entirely from public filings and other publicly available information,' the use of that publicly available information is 'fatal' to a claim of loss causation."). Unlike the short seller presentation at issue in *Meyer*, Plaintiffs allege that the Report disclosed information unavailable from CTO's public filings. Doc. 37 at 38-40. Specifically, Plaintiffs allege the Report relied upon information obtained from former CTO employees and whistleblowers, incorporated proprietary financial analysis, published a peer-group FFO-to-AFFO variance analysis, and calculated CTO's purported "true" AFFO using information and methodologies not previously available to investors. *Id.* Plaintiffs further allege "that no investor could have gleaned [these analyses] from CTO's public filings." *Id.* at 38.

Accepting these allegations as true, as the undersigned must at this stage, Plaintiffs plausibly allege that the Report revealed more than a negative opinion or a repackaging of public

information. Whether the Report ultimately proves reliable or whether its conclusions are accurate present questions inappropriate for resolution on a motion to dismiss.

**3. Plaintiffs Adequately Plead Loss Causation**

Finally, Plaintiffs adequately plead that the alleged corrective disclosure caused their economic loss. A corrective disclosure "need not precisely mirror the earlier misrepresentation." *FindWhat*, 658 F.3d at 1311 n.28. Rather, it is sufficient if the disclosure relates back to the alleged fraud and reveals facts from which the market can infer the truth of the prior misstatements. *Id*. at 1311-12.

Here, Plaintiffs allege that following publication of the Report, the market learned that CTO's reported AFFO allegedly excluded recurring capital expenditures in a manner that materially overstated CTO's operating performance. Doc. 37 at 38-40. Plaintiffs further allege that CTO's stock price declined after the market absorbed those revelations and analyses. *Id.* at 40 (alleging that the same day the Report was published, CTO's stock "fell $0.98 per share, or 5.42%, to close at $17.10 per share."). These allegations plausibly connect the alleged corrective disclosure to Plaintiffs' economic loss.

Accordingly, accepting the well-pleaded allegations as true, Plaintiffs sufficiently pleaded loss causation.

**D. Plaintiffs Fail to Sufficiently Plead Scienter**

To successfully plead a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Mizzaro*, 544 F.3d at 1238 (quoting 15 U.S.C. § 78u–4(b)(2)). Although Rule 9(b) permits a plaintiff to allege a defendant's state of mind generally, the PSLRA imposes a more demanding standard in securities fraud actions. *Id.* at 1238–39. Specifically, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the

required state of mind" with respect to each alleged violation. 15 U.S.C. § 78u-4(b)(2)(A). Accordingly, scienter must be pleaded as to each defendant and each alleged violation. *Carvelli v. Ocwen Financial Corp.*, 934 F.3d 1307, 1318–19 (11th Cir. 2019).

The required state of mind is "an intent to deceive, manipulate, or defraud," or "severe recklessness." *Carvelli*, 934 F.3d at 1318. The Eleventh Circuit has described severe recklessness as:

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 n.18 (11th Cir.1999).

In evaluating scienter, courts do not examine allegations in isolation. Rather, a court must consider the complaint as a whole, accept all well-pleaded factual allegations as true, weigh competing inferences, and determine whether the inference of scienter is at least as compelling as any opposing inference of nonfraudulent intent. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Mizzaro*, 544 F.3d at 1238–39.

While plaintiffs sometimes employ group pleading in the securities fraud context, the PSLRA requires scienter to be pleaded separately as to each defendant and each alleged violation. *See Phillips v. Sci.-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004) (The group pleading doctrine "can be broadly characterized as a presumption of group responsibility for statements and omissions in order to satisfy the particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b)."); *Mizzaro*, 544 F.3d at 1254 ("The PSLRA requires scienter to be pleaded separately as to each defendant and each alleged violation.").

Here, Defendants' argument rests entirely on the contention that Plaintiffs have failed to plead scienter because "there are no individualized allegations as to each of CTO and the Individual Defendants[.]" Doc. 43 at 21. Plaintiffs respond that they have alleged facts "that give rise to a strong inference of ***either*** recklessness or conscious misbehavior" where they allege that Defendants were "urging investors to make a specific comparison they knew was misleading and inflated CTO's performance relative to the Peer Group." Doc. 47 at 7, 8 (emphasis in original). Plaintiffs contend that scienter is adequately pleaded because: 1) the challenged statements concerned CTO's core operations; 2) Defendants held themselves out as knowledgeable regarding CTO's financial reporting and AFFO calculations; 3) Partridge resigned as CFO during the Class Period; 4) Defendants did not publicly respond to the Report; 5) Defendants' compensation was tied in part to AFFO performance; 6) Albright and Varakoun engaged in insider stock sales during the Class Period; and 7); CTO needed to maintain an inflated AFFO metric to raise capital in support of dividends. Doc. 47 at 8-10. In the Amended Complaint, Plaintiffs similarly list several categories of factual allegations they believe support an inference of scienter. Doc. 37 at 40-44.

To assess the sufficiency of the pleading, the undersigned will address the various categories of facts Plaintiffs allege support scienter. Considered individually and collectively, the undersigned finds that Plaintiffs' allegations do not give rise to a strong inference of scienter as to each defendant.

**1. Core Operations**

Plaintiffs contend that scienter may be inferred because the alleged misstatements concerned CTO's core business operations. Here, Plaintiffs allege that "Defendants" knew the significance of inflating AFFO because it was central to CTO's business, but Plaintiffs allege few particularized facts connecting that knowledge to any individual defendant's state of mind. Doc. 37 at 40-41.

The core operations doctrine enables a court "to infer that officers of a company have knowledge of critical facts related to its core operations." *City of Warren Gen. Employees'Ret. Sys. v. Teleperformance SE*, 746 F. Supp. 3d 1395, at 1412 (S.D. Fla. 2024). While the Eleventh Circuit has not explicitly adopted the doctrine, plaintiffs in securities fraud cases often invoke the doctrine to bolster an inference that senior executives were aware of a material misstatement or omission. *See Plymouth Cnty. Ret. Sys. v. Carter's Inc.*, 2011 WL 13124501, at *17 (N.D. Ga. Mar. 17, 2011); *see also Schultz v. Applica Inc.*, 488 F. Supp. 2d 1219, at 1226 n.3 (S.D. Fla. 2007) ("Where accounting irregularities are sufficiently critical to the core operations of the company, knowledge of the accounting improprieties may be imputed to the company's officers and directors who are involved in day-to-day operation of the company."). Although the significance of a metric to a company's core operations may "bolster an inference of scienter," it "is not meant to absolve Plaintiffs from alleging any specific facts"—those specific facts are still necessary to satisfy the PSLRA's heightened pleading requirements. *Theodore v. Purecycle Techs., Inc.*, 2022 WL 20157415, at *16 (M.D. Fla. Aug. 4, 2022).

Moreover, the authorities on which Plaintiffs rely do not hold that a misstatement concerning a metric related to a company's core operations automatically imputes scienter to every corporate officer. Rather, those decisions relied on additional indicia of scienter that, when considered together with the importance of the underlying subject matter to core operations, supported a strong inference as to particular defendants. For example, in *Schultz*, the court found that the core nature of the challenged subject, coupled with other individualized allegations, supported an inference of scienter as to two defendants—the entity and the CEO. *See Schultz v. Applica Inc.*, 488 F. Supp. 2d 1219, at 1227 (S.D. Fla. 2007) ("Schulman's failure to disclose the known product defects when making positive statements about [core business product] sales,

coupled with the accompanying GAAP violations, amounts to an extreme departure from the standards of ordinary care and present a danger of misleading investors that is so obvious that Applica should have been aware of it. Thus, the Complaint sufficiently pleads scienter as to Defendants Schulman and Applica."). Likewise, in *NetBank*, the court considered the alleged misstatements' relationship to the company's core operations in conjunction with allegations supporting severe recklessness. *Netbank*, 2009 WL 2432359, at *11, 14 (describing the core business as "focused primarily on consumer and small business banking" where the misstatements concerned "were effectively admissions that . . . NetBank [had] failed to account properly for its mortgage business"). Those cases therefore do not stand for the proposition that the mere fact that AFFO allegedly related to CTO's core business permits the Court to infer scienter as to all Defendants. To conclude otherwise would effectively collapse the PSLRA's requirement that scienter be pleaded with particularity as to each defendant.

The undersigned finds that the allegation that the misstatement concerned core business operations does not—by itself—support an inference of scienter.

**2. Defendants' Knowledge**

Plaintiffs' allegations that Defendants held themselves out as knowledgeable regarding CTO's finances and AFFO reporting likewise do not on their own support an inference of scienter. Doc. 37 at 41. The fact that Defendants occupied senior financial positions, signed SEC filings, or discussed AFFO with investors may support an inference that they were familiar with CTO's reporting practices. It does not, however, support a strong inference that they knew the challenged methodology was improper or misleading. *See Metro. Transportation Auth. Defined Benefit Pension Plan Master Tr. v. Welbilt, Inc*, 2020 WL 905591, at *4 (M.D. Fla. Feb. 6, 2020) ("the mere fact that the Individual Defendants were officers of [the company] who signed the financial statement certifications and who were responsible for establishing and maintaining adequate

internal controls over financial reporting fails to give rise to a strong inference of scienter. That a defendant held a senior officer position alone does not give rise to a strong inference of scienter.") (citing *Brophy v. Jiangbo Pharm., Inc*., 781 F.3d 1296, 1304 (11th Cir. 2015)).

Plaintiffs likewise rely upon Albright, Partridge and Mays' execution of CTO's Sarbanes-Oxley certifications to suggest that they had the requisite knowledge to infer scienter. Doc. 37 at 23, 26, 30, 33-34, 37. Those allegations, standing alone, carry little weight. As recognized in *Garfield*, the mere fact that a corporate officer signs CTO's Sarbanes-Oxley certifications does not create a strong inference of scienter. *Garfield v. NDC Health Corp*., 466 F.3d 1255, 1266 (11th Cir. 2006) ("Instead, we hold that a Sarbanes–Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements. This requirement is satisfied if the person signing the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions."). Were it otherwise, "scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA." *Id.* at 1266. Rather, plaintiffs ordinarily must allege specific "red flags" such as the presence of "glaring accounting irregularities." *Id.* Plaintiffs do not identify such particularized red flags.

Plaintiffs do allege that Defendants had access to capital expenditure data and peer-company financial information. Doc. 37 at 12-18. But the Amended Complaint does not identify specific reports, analyses, meetings, or communications, demonstrating that any Defendant was informed that CTO's AFFO methodology materially diverged from industry practice. In one paragraph, Plaintiffs allege that the Report included a confidential source disclosure that "CTO's

'C-Suite and Board Were Challenged on Their Use of AFFO,' but that "[m]anagement apparently brushed off these concerns because nothing has changed." Doc. 37 at 40. This allegation is similarly unavailing due to vagueness—Plaintiffs fail to allege what the "challenge" entails, when this "challenge" took place, and which "C-Suite and Board" members were "challenged." *See In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, at 1325 (M.D. Fla. 2002) ("General allusions to unspecified internal corporate information are insufficient to withstand a motion to dismiss.") (citation omitted). Nor do Plaintiffs allege when any such information was reviewed, by whom it was reviewed, or how it contradicted any particular statement at the time the statement was made.

In the Amended Complaint, Plaintiffs also emphasize the magnitude of the alleged overstatement of AFFO. Doc. 37 at 38-39. As a general matter, the magnitude of an alleged accounting error may reinforce an otherwise well-supported inference of scienter. *See e.g., In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp. 2d 1110, at 1114 (M.D. Fla. 2005) ("The sheer size of this restatement supports an inference of scienter."). But magnitude alone cannot substitute for particularized allegations demonstrating contemporaneous knowledge or severe recklessness. In *Catalina*, for example, plaintiffs alleged that Catalina overstated "income from operations by 43% and earnings per share by 56%" at a time Catalina "failed to disclose the loss of its largest European customer for more than a year." *Id.* In other words, the plaintiff alleged enough to link the alleged misrepresentation with contemporaneous knowledge. Here, Plaintiffs allege that excluding recurring capital expenditures materially inflated CTO's reported AFFO and that without such inflation "CTO's core cash flows from operations in the aggregate had a $31.2 million shortfall in covering the paid common dividends." Doc. 37 at 39. But Plaintiffs do not link the magnitude of that alleged inflation or the alleged shortfall to facts demonstrating that any individual defendant knew the calculation was misleading when the challenged statements were made.

### 3. CFO's Resignation

Plaintiffs contend that Partridge's resignation as CFO "after questions were raised about the manner CTO reported AFFO" supports an inference of scienter. Doc. 47 at 9. As pleaded, the Amended Complaint's allegations concerning the CFO's resignation carry little weight. Plaintiffs allege the following:

> Wolfpack Research reported that a confidential source said Partridge resigned from CTO after its officers and the board were challenged about the misleading manner in which Defendants presented AFFO to investors. On February 28, 2024, CTO confirmed that Partridge was resigning effective April 1, 2024.

Doc. 37 at 8. As written, the allegation provides no temporal or substantive facts to link the "challenge" to the board with the April 2024 resignation. Further, Plaintiffs do not allege that the resignation was accompanied by any admission of wrongdoing, internal findings of misconduct, or other facts connecting the resignation to the alleged fraud.

### 4. Failure to Rebut Report

The undersigned also finds unpersuasive Plaintiffs' contention that CTO's failure to rebut the Report supports an inference of scienter. Doc. 47 at 10. First, neither party cites binding or persuasive authority from within the Eleventh Circuit on this point. Doc. 43 at 14-15; Doc. 47 at 10. To the extent either party suggests the Court should rely on *Defoe's* interpretation of the matter, the undersigned is not inclined to make recommendations based on dicta from a factually distinguishable case from another circuit. *Defeo v. IonQ, Inc.*, 134 F.4th 153, at 165 n.4 (4th Cir. 2025) (noting that "Shareholders cite no authority suggesting that a firm must issue a point-by-point rebuttal to a public allegation of fraud instead of a blanket denial of the Report's accuracy to show it is not acknowledging its truth. Such a rule would impose an impossible standard on companies that likely have more important things to do than address every single public and anonymous allegation").

Regardless, as pleaded, the lack of rebuttal does not support an inference of scienter as to each defendant. Plaintiffs allege that "after Wolfpack issued its damning report exposing the Defendants' scheme, the Defendants did not publish a statement to rebut the accusations raised in the Wolfpack Report or address it at the subsequent investor call on July 30, 2025, apparently conceding its truth." Doc. 37 at 42. In *Defoe*, the critique in dicta concerned the lack of response from "a firm," not individual defendants. *Defeo*, 134 F.4th at 165 n.4. To the extent Plaintiffs consider the lack of response relevant to scienter, the allegations should be pleaded as to each defendant, not "Defendants" collectively.

**5. Defendants' Financial Compensation Incentives**

Plaintiffs also argue that scienter can be inferred from Defendants' "financial motive to inflate the AFFO." Doc. 47 at 10. In the Amended Complaint, Plaintiffs allege that the Individual Defendants' bonuses and compensation were tied to AFFO performance (Doc. 37 at 5), and that "CTO had the financial motivation to manipulate its AFFO to [raise capital] to cover its inflated dividend." *Id.* But generalized allegations that executives were motivated to improve financial performance, increase compensation, maintain stock prices, or facilitate capital raising are common to many corporate officers and are ordinarily insufficient to establish scienter. *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 595 F. Supp. 2d 1253 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th Cir. 2010) ("Receipt of a standard incentive-based bonus has limited probative value for scienter.") (citation omitted). Plaintiffs do not plead particularized facts showing that any Defendant manipulated AFFO with knowledge that the methodology was misleading in order to achieve a larger bonus.

**6. Insider Stock Sales**

The allegations regarding insider stock sales are similarly insufficiently particularized to support a strong inference of scienter. Plaintiffs allege that "Albright and Vorakoun enriched

themselves by engaging in insider sales of the Company's shares while those shares traded at artificially high prices" where "Defendant Albright sold at least 103,934 shares of CTO stock for total proceeds of $4,746,971, and Defendant Vorakoun sold at least 3,361 shares of CTO stock for total proceeds of $192,465." Doc. 37 at 41-42. But Plaintiffs do not allege facts demonstrating that the sales were unusual or suspicious in amount or timing. For example, Plaintiffs do not allege the percentage of each Defendant's holdings sold, compare the transactions to prior trading practices, or otherwise explain why the trades were inconsistent with ordinary investment behavior. Without such context, the alleged sales provide limited support for scienter.

**7. Holistic Assessment**

Considering the allegations of scienter collectively, the undersigned finds that Plaintiffs have failed to plead facts giving rise to a strong inference of scienter that is cogent and at least as compelling as competing nonfraudulent inferences. The nonfraudulent inference arising from the Amended Complaint is that Defendants employed and publicly disclosed a methodology for calculating a non-GAAP metric, explained their rationale for using that methodology, and were later criticized by a short seller who disagreed with the treatment of capital expenditures. Even assuming the methodology was flawed or misleading, Plaintiffs do not plead with particularity facts demonstrating that any Defendant contemporaneously knew, or was severely reckless in not knowing, that the challenged statements were materially false or misleading when made.

Further, Plaintiffs' choice to employ group pleading leaves the undersigned with few allegations specifying each defendants' intent or state of mind. In the Amended Complaint, Plaintiffs repeatedly allege that "Defendants," "each Defendant," or the "Individual Defendants" collectively knew that CTO's reported AFFO improperly excluded recurring capital expenditures. *See* generally, Doc. 37. Yet Plaintiffs rarely identify meetings, communications, internal reports, internal accounting analyses, internal warnings, or other contemporaneous facts demonstrating that

any particular defendant knew recurring capital expenditures should have been treated differently under CTO's methodology or appreciated that CTO's disclosures allegedly rendered AFFO misleading. Instead, Plaintiffs largely infer scienter from the Individual Defendants' corporate roles, participation in earnings calls, execution of SEC filings, and general involvement in CTO's financial reporting. Those allegations plausibly demonstrate that Defendants participated in preparing or approving the challenged disclosures. They do not lead to a strong inference that any individual defendant acted with an intent to deceive investors or with severe recklessness.

As a court observed in *City of St. Clair Shores*, allegations that merely lump defendants together substantially weaken a claim of scienter because they fail to identify the state of mind attributable to each defendant individually. *City of St. Clair Shores Gen. Employees' Ret. Sys. v. Lender Processing Servs., Inc*., 2012 WL 1080953, at *4 (M.D. Fla. Mar. 30, 2012). The same concern is present here. While this group pleading does not independently warrant dismissal of the pleading as shotgun, it substantially weakens Plaintiffs' scienter allegations because it obscures the factual basis upon which each defendant allegedly acted with fraudulent intent.

The Complaint's allegations concerning the Report do not alter this conclusion. Plaintiffs rely heavily on a confidential source purportedly referenced in that report who allegedly stated that CTO's "C-Suite and Board" were "challenged" regarding their use of AFFO and that management "brushed off" those concerns. Doc. 37 at 8. Even accepting those allegations as true, they lack the particularity required by the PSLRA. Plaintiffs do not identify when the concerns were raised, the substance of the concerns, which of Defendants received them, or the basis for the confidential source's knowledge. At most, the allegations suggest that some unidentified persons questioned CTO's AFFO methodology. They do not give rise to a strong inference that any Defendant knew that the challenged statements were materially false or misleading when made.

Accordingly, Plaintiffs have failed to adequately plead scienter, and Count I is due to be dismissed.

### E. Plaintiffs Have Not Sufficiently Pleaded a § 20(a) Claim

The parties do not dispute that Plaintiffs' Section 20(a) control-person claim asserted in Count II is derivative of the Section 10(b) claim asserted in Count I. *See* Docs. 43 at 23; 47 at 19. Because the undersigned recommends dismissal of Count I for failure to adequately plead scienter, the undersigned likewise recommends dismissal of Count II.

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **GRANT**[6] the Motion to Dismiss (Doc. 43).

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-

[6] The undersigned notes that Defendants do not specify the nature of the dismissal they seek. *See generally*, Doc. 43. On the other hand, Plaintiffs in the Response requested leave to amend the complaint "[i]f this Court grants any part of the motion," and Plaintiffs cite *Alms v. Luminar Techs., Inc.,* for the proposition that "[l]eave to amend . . . should be freely given when justice so requires." 2024 WL 5090259, at *10 (M.D. Fla. Dec. 12, 2024). But Plaintiff's request for leave to amend is improperly asserted in response to a motion to dismiss, and the matter is not otherwise fully briefed—or specifically referred—for the undersigned's consideration. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *see also* Local Rule 3.01(b) (requiring submission of a motion requesting relief). The undersigned also notes that Plaintiffs have amended their complaint at least once already in response to Defendants' motion to dismiss the original complaint. *See* Docs. 1, 17. Accordingly, the undersigned finds it appropriate not to make a recommendation concerning the nature of the dismissal, which is within the Court's sound discretion in considering this Report and Recommendation.

to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**RECOMMENDED** in Orlando, Florida on July 1, 2026.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE